Jr. On behalf of the appellant, Mr. Joseph Nickley, on behalf of the appellee, Mr. George Thomas. Okay, Mr. Nickley. Are we saying that correct, sir? You are. May it please the court. Counsel, my name is Joe Nickley, and I am the attorney for the defendant appellant Frank Kruppe Jr. This appeal involves three basic issues. First, whether it is proper for an attorney to collect attorney's fees when seeking to collect his own attorney's fees. Second, whether evidence at the trial should have been barred and the admitting of that evidence prejudiced Mr. Kruppe in the eyes of the jury and led to the jury voting against the manifest way of the evidence. Third, whether the counterclaim and affirmative defenses for malpractice were properly dismissed. First, regarding the attorney's fees. At trial in August, Whelan Law Associates was awarded approximately $30,000 in a breach of contract case regarding their attorney's fees. In the case of Frank Kruppe Jr., there was a provision in the retainer agreement between Whelan Law Associates and Frank Kruppe. There was a provision in that agreement that said that Whelan Law Associates could collect reasonable attorney's fees and costs if it sought to collect attorney's fees against Frank Kruppe Jr. Pursuant to that provision in November of 2009, approximately a little more than $19,000 of attorney's fees were awarded to Timothy Whelan Law Associates to collect their attorney's fees. That provision in that retainer agreement is void and is unenforceable. Whelan Law Associates should not have been allowed to collect their attorney's fees and seeking to collect attorney's fees. Is there some case law that prescribes it as a general proposition that's prohibited? Just in general? You could never have a provision that would allow that? Is that your position? I believe that the first district dealt with this issue in the case of Weston v. Horn. In that case, the plaintiff attorney filed a breach of action complaint against his client, the defendant, Horn. In that case, there was a fee retainer agreement that had almost the exact same provision as in this case, holding that the attorney could recover reasonable attorney's fees and costs in seeking to enforce the agreement. When was that retainer signed? Was it not signed by the terms and lustic that there already was an attorney-client privilege going on when that got signed? And if so, isn't that relevant there? I believe that the facts of that case is that shortly after there was – in that fact, his brother, the plaintiff's brother, said he was going to, I guess, personally guarantee the contract. He backed away from that, and shortly after he agreed to represent the defendant in that case, then that – So the agreement was signed? The agreement was signed. Doesn't that make a difference? I don't believe it does, Your Honor, based on the reasoning of the Weston court, that such a provision by itself is unfair. And in ruling that that provision was unfair, the court in Weston reasoned that that provision potentially violates the professional rules and professional conduct by potentially placing a client at odds with the attorney. Well, in that situation, I think there is a problem because Mr. Horne had already begun to accept the representation, maybe given certain information that, you know, you can't get back, and now he is fearful of leaving the relationship. In this particular case, no relationship existed at the time of – no professional relationship existed between your client and the law office. They were just starting the process. There might have been a consultation. That's not exactly true, Your Honor. There was a – Mr. Willen and Law Associates was in the beginning phases of representing Mr. Krupe in a criminal manner. There was no contract in that regard. I believe it was based on an oral contract, and there was fees collected based on that, and we don't think that the fees should have been collected on that either. But getting back to Lustig and Horne, the reasoning is that that provision by itself is unfair to a client. It potentially silences a client from disputing the bill. It potentially – it basically anticipates a suit against one's own client. I think I understand what some of the concerns were by the Lustig court, but did the Lustig court clearly hold that this type of a contract, this provision in the fee contract, is clearly improper, period? I believe they did. They said that this provision was void, and to quote from the court, they specifically held that the content of paragraph 3, which is the attorney fee provision, cannot be viewed as fair to Horne. That provision itself cannot be viewed as fair. All right. Didn't the Lustig court also emphasize – and what's your impression of why they put this in there? Didn't they say that, quote-unquote, particular attention will be given to contracts made or changed after the relationship of attorney and client has been established? Why did they put that in there if that was not a consideration? It may have been a consideration, Your Honor, and obviously they did have that as a consideration. But I think the ruling would broaden that. They specifically focused on this contractual provision. They did not say in this case this contractual provision is void. They did not say that this provision in regards to this case is limited as far as this case. They specifically held and said that the content of this provision cannot be viewed as fair to Horne. Well, you're reading this as a matter of law. I don't know that I have the same reading because the court goes on to say a presumption of undue influence arises when an attorney enters into a transaction with his client during the existence of the fiduciary relationship. The burden is on the attorney to rebut the presumption by clear and convincing evidence. Again, I don't know why they would have gone out and have all this explanation. They could have said flat out as a matter of public policy these provisions cannot be enforced. I think that they were heading down that way. They specifically said that this provision was a void provision. And they said that. And why did they get into these other considerations? Your Honor, I believe that they may have been factors for the court, but this court spent significant time focusing on this provision and detailing the effects of what they believe were the unfairness of this provision, the potential that it silences a client, the potential that it places a client or an attorney at odds with his attorney. And in this case, I think we have even more concern considering the trial court awarded attorney's fees for the defense of a counterclaim for malpractice. There is no rule or statute by itself that provides an attorney is entitled to attorney's fees in defending a malpractice claim against him or herself. Well, if a party goes into a relationship with an attorney or a doctor or whatever other professional you want to look at, knowing what the terms are before they've gotten into this particular relationship, you say there might have been another one going on in a criminal case, but in this relationship in the company business, isn't there, I mean, don't we look at that, that they made a choice? The fact that they had a relationship in a criminal case doesn't mean they necessarily had a relationship in this civil case, and he could have gone to any number of attorneys to represent him in the civil case. Well, in Mustang v. Orrin, the client, similar to the client, had a choice, and he signed a retainer agreement with that choice. But the provision allowing an attorney to collect fees and collecting his own fees by itself cannot be fair to the client. It silences disputes. It contemplates a lawsuit against one's own client, and that happened in this case even before Whalen Law Associates had the opportunity to even withdraw for the case. The lawsuit in this case was filed in January 2007. Whalen Law Associates does not grant a leave to withdraw its appearance until April 2007. Well, rather than spend all your time just on that, I think we understand your position correctly. You're hanging your head on Lustig. We'll have to interpret Lustig as we believe it bears on the evidence in this case. A particular concern, what about this evidence that your client didn't pay, was basically recalcitrant in paying some other bill? What's your argument of why that's reversible error? I believe that's reversible error because such evidence is not and cannot be relevant in this case. At the trial, Gary Fernandez, who was an accountant and attorney who offices with Whalen Law Associates, was allowed to testify that he was not paid for accounting services from Mr. Krupe, that he had to sue Mr. Krupe in a small claims court to recover fees. Similarly, Mr. Whalen was allowed to testify that he represented Mr. Krupe in defending other fee petitions against other attorneys. Unrelated contracts with unrelated individuals has no bearing whether there was a contract between Whalen Law Associates and Mr. Krupe, whether there was a breach of that contract between Whalen Law Associates and Mr. Krupe, and what the damages were. They're different circumstances with different facts, with different parties, with possibly different defenses. Would that be part of his motive in failing to pay in this particular case? I don't believe so, Your Honor. As I said, they're different fact patterns. There's different circumstances. It has nothing to do with this particular case and why he didn't pay or what the damages were or anything. Or his pattern of not paying? That's not relevant? I don't think. Until a lawsuit? Well, and I don't think that a pattern is sufficient to have this put into evidence. A pattern such as someone, you know, in a collision case where someone's hit by a car, you know, I always look both ways. It's not the same. These are different circumstances with different facts, and they're unrelated. And the only purpose we believe that such evidence would have would be to prejudice the jury against Mr. Krupe. So basically you're saying the jury gets the impression that once a deadbeat, always a deadbeat is sort of what you're saying? Correct. And if the roles were reversed, certainly it would not be relevant for Mr. Krupe to parade every accountant and lawyer and professional that he has paid to show a pattern of paying individuals. I don't believe that the court in this case would have allowed such evidence, and I don't think that's relevant either to these particular circumstances. Unrelated individuals, unrelated fact patterns that have nothing to do with this contract or with these parties. And did the trial court recognize this would be prejudicial or not? Well, the judge allowed the testimony. So I mean, I don't recall any specific ruling regarding or any statement, but if the testimony was allowed, then obviously the trial judge discounted that. What about if this nonpayment history became aware or Waylon became aware of it because Waylon was representing Mr. Krupe as the defendant in that nonpayment suit? Could that be identified? And I'm sorry, I don't necessarily understand your question. If the issue is he hasn't paid until lawsuits have been filed in other cases, and that's sort of the pattern that they wanted to establish, what if the first time Mr. Waylon and Mr. Krupe came to know each other is on one of the lawsuits where Mr. Krupe was being sued and Mr. Waylon was defending him? Would that be admissible? I don't believe so, Your Honor. I mean, he has personal knowledge of it. He has knowledge of the suit. I mean, in a general sense, if that was background information, that's one thing. But in this case, there was specific testimony from Gary Fernandez, who was an accountant and attorney, saying I didn't get paid, I sued him, and then he paid me after I was paid after he was sued. It's a totally different case, and it had no bearing on the facts of this case. Counsel, what about the other issue in dispute that was across the field, taking what the trial court found, even though the case did start out in arbitration, that it was bound by the jurisdictional amount of only $50,000? Why is that proper? Why is the court limited to $50,000? I think the plain language of Rule 86, Supreme Court Rule 86B, provides that a civil action in which arbitration is mandatory, such as this case, is exclusively only for the amount, the jurisdictional limit set by the Supreme Court, which in the 18th Judicial Circuit is $18,000. Is that the way it reads, or does it read, a civil action shall be subject to mandatory arbitration in each claim? Claim being the affidavit word. Is there a difference between a claim and an award? I believe so, Your Honor. I think in this case – Well, if there was a difference, then that wouldn't support your position, would it? No, there is not, Your Honor. Excuse me. I believe that it says exclusively for a claim of $50,000. And it says exclusive of interest and cost. I think that is very telling in that if the Supreme Court wanted to create a rule that allowed additional attorney's fees over the $50,000 limit, it could have provided that in the rule. But it didn't do that. It just mentioned interest and cost. Well, do you have any case law that says that this limitation applies to the trial court? The only case that we cited in our brief is the grading case. And in that case, the trial court lowered the amount claimed from $97,000 damages to $50,000. Now, in that case, the facts are a little different in that there was no affidavit filed stating what the amount was. And therefore, that case was placed in the arbitration section like this case was. In this case, there was an affidavit filed by Wedell Law Associates that stated its damages did not exceed $50,000. Based on that fact, it was filed in the arbitration division, which limit is only $50,000. If the damages were to exceed $50,000 and if they were entitled to receive more than $50,000, the affidavit could be amended. The case could be sought to transfer to law division. But it was not. It was filed in the arbitration division with an affidavit that specifically said that the damages do not exceed $50,000. Well, what about Section 2, to draw an analogy, Section 2.604 of the Civil Practice Act states, except in cases of default, the purfer relief does not limit the relief obtainable, does it? So according to you, then, if a plaintiff filed a lawsuit in reference to a specific figure, then they're forever barred from seeking more than that? But it's not the claim of the relief. It's an affidavit filed that the amount did not exceed $50,000. And based on that, it was filed in the arbitration division of the 18th Judicial Circuit. I understand that. But once it's rejected and goes to the court, where's the specific language that limits the court's authority? I would argue that the language contained in Rule 86B is that language. It says exclusively for the claim of $50,000. Okay. Thank you. Thank you. Thank you. You'll have an opportunity for rebuttal. Thank you, Your Honor. And Mr. Thomas? Thank you. Good morning. May it please the Court and the Counsel. I think I'll begin by responding to the issues that were only those issues that were addressed, and then I'll go on to the cross-appeal that Your Honor has already raised. In the course of your discussion and response, would you address why Lustig does not control it? I think Your Honor hit it on the head. The Lustig court addressed a situation in which the fee agreement that was initially to cover the representation of Mr. Lustig by Mr. Korn was going to be with a third party. It was going to be a guarantor of payments. They sought that. When that fell through, then he and Mr. Korn had already started the representation. He then went to Mr. Lustig and said, Okay, I want you to sign this, and I want you to sign the provision for attorney's fees. The First District, in looking at it, also made note of the fact that there were protestations by Mr. Korn through the representation up until the point when suit was filed. I think it's pretty clear that the trial court, in reviewing that and disallowing the fees, was honing in on the fact that the representation had commenced, that at that point there was a fiduciary relationship, and at that point when that fiduciary relationship arose and existed, it was incumbent upon the attorney to show that he wasn't overreaching. He's not overreaching now. He's already in with the case. He's representing it. Oh, by the way, if things go south, here's his form. That's different as Justice Hutchinson alluded to. You're starting out fresh. You've got the power of choice to decide whether you want to… run this risk or not. That's correct. And in this case, as the court is aware from reviewing the record, the representation for this particular issue, this particular matter, which was the chancery case in the Cook County Circuit Court, Mr. Whalen initiated by… there was a communication between the two of them, and then he initiated it by sending a letter saying, These are the terms of our representation. If you wish our office to represent you in this matter, please return this or return a $2,500 deposit as a retainer. He could have declined. He could have declined, and he didn't. He sent the retainer, and that's set forth in the record. So I think that Lustig would apply if the facts were the same, but the facts here are greatly different, and therefore it is truly inapplicable. What about the fact that there may have been an existing relationship in the criminal forum? I don't think the records indicate that there was a crime, but I think the record, in fact, will represent that there had been prior representation of Mr. Krupe by Mr. Whalen's law office, and that representation was with a matter in which Mr. Krupe had declined to pay a previous client. That was testimony. And that Mr. Whalen's office represented him in the appeal of that case. With regard to whether it's a different matter, what you might have is the court were to rule that you can never do that. What you would have is a situation where I as counsel, if I represented an individual, say, in the defense of a DUI case, and that was concluded, and then that individual later came to me for representation regarding a breach of contract suit, that I could never have an agreement with that client that would enable me to obtain attorney's fees in the event that they breached the agreement. One more issue. Is there a fiduciary relationship at that point ongoing when the matter has been terminated and somebody subsequently comes to the attorney? Is there really an ongoing fiduciary relationship at that point? I don't believe so. I don't know of any cases that hold that once the representation is terminated that an attorney still stands in a fiduciary relationship forever. We would then be in a greatly diminished position with regard to any other professional. They don't have a fiduciary relationship either after it's terminated. If I might move on, I think the second thing that was raised was the witness testimony and whether or not Mr. Whalen or Mr. Fernandez could testify. The record will show that there were two pretrial motions in limine with regard to testimony in trial. Mr. Whalen sought to bar Mr. Krupe from testifying regarding an alleged request for a loan. Mr. Krupe filed a motion in limine requesting that we be barred, Mr. Whalen be barred, from presenting any evidence of his failure to pay other professionals. Trial court heard argument on both motions, ruled that the probative value outweighed the prejudice. That, in fact, the trial court's response to me specifically was that, okay, there is prejudice. Those things always have inherent prejudice. Any time that there is testimony about any act that someone can construe as having been a bad actor is going to be prejudiced. The question is, is it more probative? It's not only probative. The court ultimately gets to that. There's a two-step process. The first part would be evidence of other offenses doesn't come in, that's the general rule, clearly by the Hormel Clause, does not. There's a presumption it doesn't unless it fits within some well-recognized exception. Intent, modus operandi, identity, there's some specific purpose for allowing this evidence in. So which category does it fit in in this case? In this case, the court specifically found that it was relevant to show the pattern that Mr. Krupe did not pay until soon after. Is that a well-recognized exception pattern? We know modus operandi. What is this general pattern? Is that some new law the court carved out in this case? Well, I don't know that the court carved out a new law, but it shows the person's inclination, what their past acts have been, what they generally do under these circumstances, and that that goes to the credibility of the witnesses and that the trier of fact is entitled to hear that. So it's not really modus operandi, as that term is technically used. This is the trial court saying, yeah, there's some logic to it, so therefore it's okay. Is that really a permissible exception to the prohibition against evidence of other offenses or bad acts? I believe it is. And I believe that the trial court reviewed this and, as it's required to do, weighed the balancing of one against the other and decided that this was of value for the trier of fact to determine whether or not the individual was refusing to pay because there was a valid reason or whether they wanted to. Or because he's a deadbeat in general. I mean, isn't that really, for Kennedy, what we're sort of suggesting? He's a deadbeat before, so it's relevant to determine if he's a deadbeat in this case. Obviously, the trier of fact could conclude that, but the trier of fact looking at it could also say, well, wait a second. I've listened to the evidence. I've not heard any issues raised which show any type of valid reason that the person hasn't paid. There really isn't a defense to the nonpayment. And why isn't this person paying? In this case or the other case? In this case. How do you respond to your opponent's argument that has some logical, intuitive appeal? Well, there could be a myriad of reasons why he didn't pay in the other cases that didn't come in. There could be legitimate legal reasons why he didn't pay. But now this evidence comes in that he's a deadbeat and we really don't know what happened in the other cases, do we? Under 2613. Well, they may not know what if they could, but they could inquire the defendant when that evidence is introduced, has the ability to cross-examine the other side, has the ability to go into the specific facts of it. When you're getting into a trial within a trial, aren't you? I mean, that's not what we're supposed to be doing in trials. That's correct. We shouldn't be doing a trial within a trial. But the defendant has the ability to question that, to determine whether or not there is a basis. In addition, I think in further answer to Justice Hudson's point, I think that the defendant has the ability to introduce any defense they want. And if it's something that is of an affirmative nature, the Code of Civil Procedure requires that it be disclosed earlier, and they can introduce that at trial. Let me ask you this. Isn't there really a heightened concern in this case with the type of evidence that came in here? Because you have a situation where, unlike some cases, you might have other physical evidence or corroborating evidence, and I think you opine this in your closing argument, this case essentially turned on a question of credibility. That is, the jury's assessment of who is truthful, who is honest. When you throw in somebody who's always a deadbeat, I mean, I think that's even more prejudicial than usual in a case like this, because there's really no other evidence other than the testimony. Well, Your Honor, there was no evidence introduced that said the person is always a deadbeat. There was evidence that was introduced that said, on this occasion, Mr. Whalen represented Mr. Krupe in an appeal for nonpayment of attorney's fees regarding a probate case, I believe it was a probate case, in the Circuit Court of Cook County, more precisely, in the First District Appellate Court. Also, they had the evidence that Mr. Fernandez said that he hadn't been paid until he sued, and then he was paid. So the trier of fact heard that Mr. Krupe did, in fact, pay. After he was sued. Right. It sounds like somebody doesn't like to pay his bills until they get sued. That's clearly the inference, isn't it? It clearly can lead a trier of fact to make a determination as to whether that person is a person who breaches contracts, has a basis for the breach of contract, or does not. And the credibility of the witnesses was key in this case. As I intimated earlier, or I stated earlier, Mr. Krupe was permitted to testify that he had asked for, or that Mr. Whalen had asked him for a loan, and that it was basically the intimation being that that was what he did because he wasn't being paid, and that's what broke the relationship. Well, that was just as prejudicial to the character of Mr. Whalen, and the court permitted that also to be testified to. And it was. Let's move to another point quickly here. We have this issue of the limitation, appears to be a case of first impression on a jurisdictional amount. What happens when the arbitration award is rejected, the appeal is then taken to the court? Counsel cites the general rule that says the limitation applies forever, and not only to the arbitrators, but to the court as well. What's your position on that? My position is there is no limitation on the court. If one is to read all of the rules that apply to arbitration, that's precisely what they do. They apply to arbitration. When I sit as an arbitrator, they impact me. I don't see a rule anywhere that says the court's jurisdiction is limited. In fact, as we know, our Constitution makes our courts courts of general jurisdiction without limitation on their limits. Now, courts themselves may, in fact, structure subclasses within, divisions within it, but I don't know that that limits. In fact, I believe it does not limit the trial judge from hearing it. If it did, as we pointed out, it would have a situation where if I filed a case in DuPage County that has a $50,000 limitation, or I filed a case in one of the downstate circuits all the way down near Cairo, Illinois, that don't have arbitration at all, those rules, the arbitration rules, do not apply. Therefore, the attorney filing it here, same case as down there, would be treated differently. That would violate equal protection clauses of both the United States Constitution and the Illinois Constitution. You would have a loss without a remedy. So the affidavit that's filed that gets this to arbitration is what you're saying, basically just an organizational rule that tries to keep some sort of either hierarchy or organization to court management as opposed to court cases? The Rule 222B affidavit that is required to be filed is to allow the court to determine where it goes. Obviously, if you're seeking damages greater than $50,000, the case cannot be assigned to arbitration. So it goes up. There's also the provision under Rule 222 that that be amended. In this case, we couldn't amend it. The amount of fees that put this case above $50,000 occurred during the conduct of the trial, not prior to it. So the argument that it should have been amended and then filed with the court prior to the trial wouldn't cure this instance. It is a case of first impression. I did extensive research, and I can't find anything that shows it. I think that this court will be making law on this instance. Thank you. Thank you very much, Counsel. I mean, I think just working backwards from the arguments that Counsel just raised, I think the affidavit is determinative in this case, the Rule 222 affidavit. It can't be merely a hierarchy or something for court organization. It's a Supreme Court rule that specifically provides that if a case exceeds, it must be stated whether the case exceeds $50,000 or does not. Now, Rule 86B, which I know I've cited before, but it specifically talks about civil actions and that mandatory arbitration applies to civil actions that do not exceed the jurisdictional limit. That rule specifically excludes from that interest and cost. If the Supreme Court wanted to include attorney's fees in that exclusion, it could have said so, but it did not. Well, what about his argument that if you're in a county, it doesn't have this restriction, you're going to have different rules applying in different places. It's a violation of legal protection. What do you make of that argument? Well, I don't believe that it would be a violation of legal protection because you're basically stating from the front, not from the start, with the affidavit of what the damages in the case are. And you're saying that it does not, it will not exceed $50,000. But what's the purpose of the affidavit? Is it to bring it within certain divisions or is the purpose for all time to limit the amount of your damage that you can prove? I believe that it's exclusively for a, the civil action limits the amount of damages. It says exclusively, mandatory arbitration exclusively for this limit. And in DuPage County, it's $50,000. So if Plannage Council wakes up later and says, oh, my goodness, I missed $100,000 of damages, according to you, that's the end of the ballgame. You're stuck with $50,000, right? Well, right. But the point, I guess, is of Rule 222 is that it provides for a simplified discovery. And by doing this, when, you know, by filing the affidavit. When you go to arbitration, it provides for simplified discovery. Well, I would argue that it also simplifies discovery when you go to trial. I mean, after. But that never happens. I mean, if there's a rejection, that never happens. But in most cases, discovery is closed by the time you go to arbitration. You can't even take an evidence deposition before you go without leading courts to an arbitration. But you all, I can't, I mean, I can't think of a case where I never allowed it to happen. Well, the Rule 222, it's a simplified discovery provision, and that's the purpose for the affidavit. And if a party is, you know, I'm going on an arbitration where it's simplified discovery, and then is allowed to seek damages in way of excess, that's similarly not fair to a party. But the damages could not be determined as you walked in the door because they could have walked in the door, filed a lawsuit, and Mr. Coopey might have said, I'll pay. And then they wouldn't have been beyond $50,000. That's correct. But the statute, the Rule 86B specifically excludes interest and cost, which is a, obviously, continuing, a thing of continuing interest. Well, attorney's fees have never been considered costs. I understand that. But if they wanted to include attorney's fees, they would have said, attorney's fees, cost and interest. They exclude it. They recognize that cost and interest are something of a continuing nature that may not be something that you can put your finger on right when you file the case, but may be something that accrues over time. And therefore, the Supreme Court has excluded that in the Rule 86B. They have not done that with attorney's fees. They could have easily said, attorney's fees, cost and interest. And based on that admission, I would argue that the plain reading of the rule says that attorney's fees, even if they are of a continuing nature, aren't recoverable if it exceeds the jurisdictional limit. Now, in regards to the arguments of the pattern that Mr. Coopey is a deadbeat, I think the only purpose of such evidence is that the – By the way, I'm not suggesting he's a deadbeat. I understand. I'm referring it to that to simplify. But I think when you're talking about using evidence to establish a pattern, the example that I keep going back to is if someone's hit by a car and they have a pattern, they have a habit of always checking both ways. That is something that is entirely different from this case. As Justice Hudson has touched upon, it's different facts. The cases could have different legal theories. And the only way to have brought that out would have been to basically try those cases over again, which I don't believe that the rules allow. And I keep thinking that if Mr. Coopey wanted to parade every professional that he wanted to, that he's paid to prove that he has a pattern of payment, that such evidence is similarly irrelevant and would have been barred. Well, but you don't – if the judge had allowed this evidence that he hadn't paid until lawsuits were filed, why couldn't he rebut that? And why would a judge say you can't do that? Well, I – I mean, you're saying it's not likely. Well, maybe it's not likely, but it doesn't mean it wouldn't happen. And I would agree with you. But I think to demonstrate the point that both sides of the coin that it's similarly irrelevant and should have been barred. It's cumbersome, but it doesn't mean it necessarily wouldn't happen. Correct. Any other questions? No. All right, thank you, counsel. Thank you, Your Honor. Thank you both for your argument. We will take this case under advisement as well.